**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Mattie B. DUTTON et al., Defendants-Appellees,**

**Mamie Ann Sheley, Defendant-Appellee, Appellant.**

**No. 77–1361.**

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1978.

Rehearing Denied Jan. 8, 1979.

John M. Tatum, Savannah, Ga., for plaintiff-appellant.

William E. Callaway, Jr., Claxton, Ga., James M. Thomas, Savannah, Ga., for defendant-appellee, appellant.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

CHARLES CLARK, Circuit Judge:

As a result of a domestic quarrel between Wensley Sheley and his wife Mamie Ann, Mr. Sheley was fatally wounded. John Hancock Mutual Life Insurance Company insured Sheley's life. John Hancock disputed its liability under an accidental death provision of the policy in the portion of the action tried to a jury. Sheley's widow contested the rights of Sheley's former wife, Mattie B. Dutton, to receive the insurance proceeds in the remaining portion of the action tried to the court. Mrs. Sheley and John Hancock appeal adverse judgments received in these trials. We affirm.

## I. The Liability of John Hancock

### A. *The Facts*

Wensley Sheley married Mamie Ann Sheley on September 7, 1974. Their relationship was characterized by frequent violent quarrels. Prior to their marriage, Mr. Sheley had held a gun to Mrs. Sheley's head, while she, then his landlady, was trying to collect rent. During the marriage, Mrs. Sheley was the victim of a number of beatings at the hands of Mr. Sheley, and, on various occasions, he threatened and attempted to shoot her and to run over her with a car. The Sheley's decided their differences could not be resolved and sought a divorce. Mr. Sheley demanded that Mrs. Sheley return his rings and, when she refused, he threatened to cut off her finger with his Boy Scout knife. Their divorce became final on January 7, 1975.

Subsequently, Mrs. Sheley entered a hospital because of injuries received in an automobile accident. During her convalescence, Mr. Sheley visited her daily. The Sheley's were remarried on March 3, 1975.

The series of events that culminated in Mr. Sheley's death occurred on March 15, 1975, just twelve days after the second marriage. On that evening, the Sheleys left their home in Claxton, Georgia, to attend a motion picture theater. Mr. Sheley had been drinking heavily that afternoon and continued to drink during the movie. On the return trip, Mr. Sheley stopped and bought some french fried potatoes for Mrs. Sheley. He became angry when Mrs. Sheley refused to eat them, and the argument continued after the Sheley's had arrived at their home. Mrs. Sheley's daughters heard the quarreling and entered the Sheleys' bedroom to check on their mother. The daughters became involved in the argument, and Mr. Sheley made a threatening remark to one of them. He then removed a gun case from under his bed and began

unsheathing a shotgun which Mrs. Sheley knew was loaded. Already fearful because of Mr. Sheley's prior assaults, she had acquired a pistol. Mr. Sheley knew she possessed the pistol. As he removed the shotgun, Mrs. Sheley took her pistol from her purse and shot him. A policeman called to the scene testified that Mr. Sheley, before his death, said, "I didn't think she'd shoot me."

John Hancock had issued two policies of ordinary life insurance on Mr. Sheley's life in the total amount of $26,000. The policies also provided for the payment of double indemnity benefits in the event of accidental death. Pursuant to 28 U.S.C. § 1332, John Hancock brought an interpleader action in district court under Federal Rule of Civil Procedure 22, admitting liability for the proceeds of the ordinary life insurance, but denying the claims of additional liability based on the accidental death clause in the policy. The jury found John Hancock liable for the accidental death proceeds. John Hancock then moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The district court denied these motions. John Hancock appeals these rulings.

### B. *The Accidental Death Issue*

█ John Hancock contends that the trial judge should have granted its motion for judgment notwithstanding the verdict. Even though Georgia law governs the substantive issues in this case, the federal law standard is to be applied in assessing whether the judgment n. o. v. should have been granted, *Brown v. State Farm Mutual Automobile Casualty Insurance Co.*, 506 F.2d 976, 978 (5th Cir. 1975); *Messick v. General Motors Corporation*, 460 F.2d 485, 494 (5th Cir. 1972). "Under federal law, if the evidence is of such a character that reasonable men exercising impartial judgment may differ in their conclusion," then the jury verdict must stand. *Brown*, 506 F.2d at 978.

█ John Hancock urges that under this federal procedural standard the substantive law of Georgia requires that reasonable

men must find that Mr. Sheley's death was not accidental. In Georgia, in order to recover on an accidental death policy, a claimant must show that the act causing the insured's death was "unforeseen, unexpected, or unusual." *Life Insurance Co. of Georgia v. Williams*, 109 Ga.App. 264, 265, 135 S.E.2d 925, 926 (1964). Even when the insured is the aggressor in a situation, a claimant can still recover under an accidental death clause if he can show that the insured reasonably believed that the victim of his aggression would not kill him. *Johnson v. Southern Life Insurance Co.*, 95 Ga. App. 625, 628, 98 S.E.2d 382, 385 (1957); *Green v. Metropolitan Life Insurance Co.*, 67 Ga.App. 520, 526–528, 21 S.E.2d 465, 470–71 (1942). The Georgia courts have applied this rule in domestic quarrels.

In *Riggins v. Equitable Life Assurance Society*, 64 Ga.App. 834, 14 S.E.2d 182 (1941), a quarrel between insured and his wife began at a carnival. The insured followed his wife home and the argument flowed in and out of the house. The wife shot her husband as he was breaking down the door. The evidence showed that the insured had previously beaten his wife and that she had not taken any steps to protect herself. The court held that the facts created a jury issue as to whether the insured reasonably believed that his wife would not shoot him.

In *Carolina Life Insurance Co. v. Young*, 99 Ga.App. 848, 110 S.E.2d 67 (1959), while the insured was beating his wife and threatening her with a knife, the wife got a gun. She warned her husband that she would shoot him if he did not leave her alone. The husband grabbed the gun, and, in the ensuing struggle over it, he was killed. There had been a number of fights between the insured and his wife, and the wife had never resorted to a weapon to stop the fight before. The Georgia court held, as a matter of law, that despite the wife's prior reticence, the husband must have anticipated that the product of his struggle with his wife could have been his death. On rehearing, the court distinguished *Riggins*, noting that, "Here the deceased in-

sured actually undertook to struggle for possession of a loaded firearm and the evidence of previous altercations with his wife did not involve the use of a dangerous instrumentality on her part." 99 Ga.App. at 856, 110 S.E.2d at 73.

In *Life & Casualty Insurance Co. v. Hulsey*, 109 Ga.App. 15, 134 S.E.2d 880 (1964), the insured and his wife were arguing about the insured's drinking and poker playing. During the quarrel, the husband got a rifle and held it to his wife's head, threatening to shoot her. He had made similar threats before, and the wife had not retaliated. Subsequently, the insured shot his wife and she blacked out. When she regained consciousness, she and her husband struggled over the rifle, and the husband was fatally injured. The court held that a jury issue was created with regard to the husband's accidental death, relying on the fact that the wife had never before responded to the husband's attacks. The court distinguished *Young* on the grounds that "there was a family quarrel history but not with deadly weapons." 109 Ga.App. at 17, 134 S.E.2d at 882.

■ John Hancock argues that *Young* should control this case. John Hancock contends that Mr. Sheley must have anticipated that Mrs. Sheley might shoot him since (1) it was the first quarrel in which Mrs. Sheley was armed, (2) Mr. Sheley knew that she was armed, and (3) it was the first time Mr. Sheley had threatened one of Mrs. Sheley's daughters. John Hancock reads *Young* to require that a claimant, in order to prove an accidental death, must show that the insured had threatened or assaulted his wife with a deadly weapon when she also had access to a deadly weapon and that she did not attempt to defend herself. John Hancock urges that since the altercation in question was the first one in which Mrs. Sheley was armed, *Young* requires that the accidental death issue be taken from the jury.

We reject John Hancock's arguments. The courts in *Riggins* and *Hulsey* did not even mention whether the wife had been armed during previous assaults, and the

facts in *Young* are clearly distinguishable from those in this case. In *Young,* the parties were struggling over a loaded weapon when the insured was shot, and the wife had actually warned the insured that she would shoot him. The court held that these facts, together with the showing that the wife had never before attempted to use a deadly weapon in the couple's domestic fights, conclusively established that the insured could not reasonably have believed that his wife would not kill him. In the case at bar there was no struggle between the parties involving a loaded weapon, and Mrs. Sheley never warned Mr. Sheley that she was about to shoot him.

Even if *Young* established the proposition that John Hancock relies on, the *Hulsey* court, in a situation very similar to that in *Young,* retreated from the broad implications of *Young.* In *Hulsey,* the Georgia court interpreted its prior decision in *Young* to apply only when there is no history of quarrels with deadly weapons. This is not the case here. Mr. Sheley had threatened his wife with all manner of deadly weapons prior to his death. She had never before responded with force. Moreover, there was evidence introduced tending to show that Sheley was not afraid of his wife and did not believe that she would shoot him. The Georgia cases clearly establish that in determining whether the insured's death is accidental, the controlling fact is the husband's reasonable beliefs concerning his wife's reaction to his aggression. In light of the Georgia law, reasonable men might have concluded from the facts in this case that Mr. Sheley's death was accidental. The district court was correct in denying John Hancock's motion for judgment notwithstanding the verdict.

### C. *Gail Bell's Testimony*

John Hancock contends that the district judge erred in admitting the testimony of one of Mrs. Sheley's daughters, Gail Bell, to the effect that she did not believe that Mr. Sheley thought that Mrs. Sheley would ever shoot him. John Hancock urges that (1) the testimony was irrelevant, and (2) in any

event, Bell was unqualified to testify as to Mr. Sheley's subjective feelings.

Under Rule 401 of the Federal Rules of Evidence, " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Determining whether a fact is "of consequence to the determination of the action" requires an examination of the applicable substantive law. Wright & Graham, 22 Federal Practice and Procedure § 5164 at 38 n. 3 (1978) (quoting James, *Relevance, Probability and the Law*, 29 Calif.L.Rev. 689, 969 n. 15 (1941)). John Hancock argues that Bell's testimony should have been excluded, since, under Georgia law, Mr. Sheley's subjective beliefs concerning the reactions of Mrs. Sheley to his attacks was not an issue in the case.

■ The admissibility of evidence is committed to the discretion of the trial court, and a trial court's ruling regarding the relevancy of evidence can be overturned only upon a finding of an abuse of that discretion. *Wallace v. Ener*, 521 F.2d 215, 222 (5th Cir. 1975); *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529 (5th Cir. 1974). In this case there clearly was no abuse of discretion. Under Georgia law, a claimant must, in order to receive benefits under an accidental death policy, show that the insured believed that his victim would not kill him and that this belief was reasonable. *Riggins v. Equitable Life Assurance Society*, 64 Ga.App. 834, 835, 14 S.E.2d 182, 184 (1941). Thus, Bell's testimony was relevant to an issue of consequence in this case.

■ John Hancock also urges that the admission of Bell's testimony violates Federal Rules of Evidence 602 and 701. Rule 602 requires that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Rule 701 limits the opinion testimony of lay witnesses to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a

clear understanding of his testimony or the determination of a fact in issue." John Hancock contends that Bell could not have had personal knowledge of Mr. Sheley's subjective state of mind and that Bell's opinions were therefore not rationally based upon her perceptions.

We reject John Hancock's views concerning Rules 602 and 701. Under John Hancock's construction, a witness could never testify to his views concerning the feelings of another person. As Dean Wigmore has stated:

> The argument has been made that, because we cannot directly see, hear, or feel the state of another person's mind, therefore testimony to another person's state of mind is based on merely conjectural and therefore inadequate data. This argument is finical enough; and it proves too much, for if valid it would forbid the jury to find a verdict upon the supposed state of a person's mind. If they are required and allowed to find such a fact, it is not too much to hear such testimony from a witness who has observed the person exhibiting in his conduct the operations of his mind.

2 J. Wigmore, Wigmore on Evidence, § 661 at 773–74 (3d ed. 1940). When, as here, the witness observes first hand the altercation in question, her opinions on the feelings of the parties are based on her personal knowledge and rational perceptions and are helpful to the jury. The Rules require nothing more for admission of the testimony. The district court did not abuse its discretion in admitting Bell's testimony.

### D. *The Scandalous Tape Recording*

During the trial, Dutton and Sheley requested that a tape recording of a conversation between Shirley Ann Blocker and Mr. Sheley be played. Some of the rather garbled recording related to the sexual activities of the participants. Apparently, when the proffer of the tape was first discussed out of the presence of the jury, John Hancock's counsel indicated that he would object to its admission. At the commencement of an afternoon session in which the

tape was to be played, counsel for John Hancock inquired whether he should then state his objection. The district judge instructed the lawyer that he could make his objection at a later time. The judge then turned to the jury and said, "[The tape] is forty minutes long, and I hate to inflict it on you, but counsel for both sides apparently desire that the entire tape be played, so I will direct it to be played." After the jury had retired from the courtroom, the court allowed John Hancock's counsel to place his position of record. At that time counsel stated, "[W]hat did get on the record was not my objection. Your statement, Judge, that counsel for both sides wanted the tape played, that tape was played over my objection." The court then stated, "Well, I understand that. I couldn't tell the jury that you were the one objected to it." The lawyer then made his objection to the playing of the tape and the judge overruled it. John Hancock claims that the judge committed reversible error both in telling the jury that neither side objected to the playing of the tape and in admitting the tape into evidence.

It is clear that issues not raised in or presented to the district court will not be considered for the first time on appeal in the absence of plain error. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976); *Excavators and Erectors, Inc. v. Bullard Engineers, Inc.*, 489 F.2d 318, 320 (5th Cir. 1973). In this case, John Hancock never objected to the judge's statement to the jury that "both sides apparently desire that the entire tape be played." The judge was never asked to inform the jury that John Hancock in fact objected to the playing of the tape. Thus, the error John Hancock seeks to urge here concerning advice to the jury of its objection to the tape was never properly presented to the district court. If any prejudice to John Hancock resulted from the district court's statement to the jury, it most certainly does not rise to the level of a miscarriage of justice necessary to constitute plain error.

John Hancock contends that the tape recording was improperly admitted because it is irrelevant to the issues in the case. This contention is without merit. The conversation is replete with Mr. Sheley's statements that he was not afraid of Mrs. Sheley. This is clearly relevant to the issue of whether Mr. Sheley believed that Mrs. Sheley would kill him. See Part I. C., *supra*.

John Hancock argues that the salacious material contained in the conversation unduly prejudiced the jury against its insured. Under Rule 403 of the Federal Rules of Evidence, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." We have before held that the trial court is to be accorded broad discretion in making its determination under Rule 403. *United States v. Tidwell*, 559 F.2d 262, 266–67 (5th Cir. 1977); *United States v. Johnson*, 558 F.2d 744, 746 (5th Cir. 1977). We have listened to the tape recording in question. Parts of the conversation were sexually explicit; however, the district judge was within the ambit of his discretion in admitting the tape, given the relevance of Mr. Sheley's remarks to the central issue in the case.

### E. Other Errors

John Hancock contends that the district court erred in refusing to adopt the jury instructions offered by John Hancock. The proffered jury instructions provide that the jury must find that Mr. Sheley's death was not accidental if he "provoked his own death or participated in the act which caused his death." The requested instructions were a misstatement of applicable Georgia law, *see* Part I. B., *supra*, and the district court was correct in refusing to give them.

John Hancock also asserts that the trial court erred in denying it the right to open and conclude the argument. The district court allowed Sheley and Dutton to open and close the argument because the court had concluded that the burden of proof on the accidental death issue was on

them. In diversity cases state law governs the allocation of the burden of proof. *Palmer v. Hoffman*, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645, 651 (1943); *Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 398 (5th Cir. 1965). Under Georgia law the burden is on the claimant to show accidental death. *Riggins v. Equitable Life Assurance Society*, 64 Ga.App. 834, 835, 14 S.E.2d 182, 184 (1941). In light of the allocation of the burden of proof made by Georgia law, the district court did not abuse its discretion in allowing Dutton and Sheley to open and close the argument.

## II. The Beneficiary Contest

On July 19, 1971, Sheley designated his first wife, Mattie B. Dutton, as the beneficiary under the life insurance policies. Sheley and Mrs. Dutton were divorced on August 30, 1974. Shortly after Sheley married Mamie Ann Sheley, he sent a letter requesting change of beneficiary forms and stated that he wanted to make Mrs. Sheley his beneficiary. The forms were executed in the presence of Mrs. Sheley, but Sheley never mailed them. After Sheley died, Sheley's supervisor found the forms in Sheley's desk drawer and mailed them to John Hancock.

Mrs. Sheley and Mrs. Dutton each claimed the proceeds of the policy. Mrs. Sheley contended that the execution of the forms was effective to make her the beneficiary. Mrs. Dutton called two witnesses who stated that Mr. Sheley had indicated to them that he never intended to mail the forms. After an evidentiary hearing, the court determined that Mrs. Dutton was the intended beneficiary. Mrs. Sheley appeals this decision.

We may not overturn a finding of fact made by a district court unless it is clearly erroneous. *Ealy v. Littlejohn*, 569 F.2d 219, 229 n. 31 (5th Cir. 1978); *James v. Stockam Valves & Fitting Co.*, 559 F.2d 310, 314 n. 1 (5th Cir. 1978). Mrs. Sheley contends that the findings concerning the change of beneficiary entered here were clearly erroneous because the execution of the forms by Mr. Sheley and their subsequent mailing by his supervisor was sufficient to make her the beneficiary under the terms of the policies.[1] Mrs. Sheley's arguments are inconsistent with the language concerning designation of the beneficiary contained in the policy. The first policy stated that "the employee may from time to time change the beneficiary by filing written notice thereof with the employer." The second policy provided that "such insured person may from time to time change his beneficiary without the consent of any prior beneficiary, by filing written notice thereof with the company." Both policies clearly require more than a completion and signature of the forms to effect a change of beneficiary; the policies require that the insured actually file the forms before the change is effective. Here the forms were not filed by the insured nor by anyone acting under his direction; rather, they were filed by someone who discovered them in Mr. Sheley's desk drawer after his death. Thus, the requirements of the policy for a change of beneficiary were not met.

The Georgia courts have permitted a change in the beneficiary of an insurance policy despite failure to comply with all the

---

1. The change-of-beneficiary provisions of the policy provided as follows:

*Policy 38400–GTC*
The employee may from time to time change the beneficiary by filing written notice thereof with the Employer. After such written notice has been received by the Employer, the change shall relate back to take effect as of the date the employee signed said written notice of change whether or not the employee be living at the time of the receipt of such notice, but without prejudice to the company on account of any payment made by it before receipt of such written notice.

*Policy 38400–GTC–66*
Such Insured Person may from time to time change his beneficiary without the consent of any prior beneficiary, by filing written notice thereof with the Company. After such written notice has been received, the change shall relate back to take effect as of the date the Insured Person signed said written notice of change whether or not the Insured Person be living at the time of the receipt of such written notice, but without prejudice to the Company on account of any payment made by it before receipt of such written notice.

requirements of the policy if "an insured does substantially all he is able to do to effect a change." *Mitchell v. Mitchell*, 126 Ga.App. 664, 665, 191 S.E.2d 587, 588 (1972). In *Mitchell*, the insured, who was hospitalized with terminal cancer, completed the change of beneficiary forms and delivered them to his mother. The policy required that the insured, in order to change the beneficiary, file a written notice with the company, accompanied by the policy. The court held that even though the insured failed to follow the provisions of the policy, a jury issue was created concerning whether he intended to change the beneficiary; there was evidence that the insured had done all he could do to change the beneficiary.

*Mitchell* is of no help to Mrs. Sheley. Mr. Sheley did not do all he could have done to change the beneficiary; indeed, the evidence indicated that Sheley deliberately withheld the forms. Moreover, the district court found that Mr. Sheley knew that the forms, in order to be effective, had to be delivered, and yet he never sent them. In light of the evidence adduced at the hearing, the finding that Mr. Sheley did not intend to make Mrs. Sheley his beneficiary was not clearly erroneous.

AFFIRMED.