714 F.2d 474
 Jeffrey A. MURDOCK, Jr., a minor, By and Through his mother,
guardian and next friend, Stevonne MURDOCK,
Plaintiff-Appellee,
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES,
Defendant-Third-Party-Plaintiff,
Annie Lois Walker, Third-Party-Defendant-Appellant.
 No. 82-4540
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 12, 1983.
 Bobby G. O'Barr, Matt G. Lyons, Biloxi, Miss., for third-party-defendant-appellant.
 Johnston & Steinberger, Karl R. Steinberger, Albert S. Johnston, III, Pascagoula, Miss., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before BROWN, REAVLEY and JOLLY, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 Jeffrey Murdock, Sr. died in a fire on February 8, 1981. At the time, he, as an employee of Bell States East (a division of Western Electric Corporation), was insured pursuant to a group policy issued by the Equitable Life Assurance Society of America. The terms of the policy permitted the insured to change the named beneficiary but required that any changes be in writing. Furthermore, the policy provided that such changes would become effective only when designated on the insurance records of the employer which were filed at Western Electric's home office in New Orleans, Louisiana.
 
 
 2
 On June 27, 1980, Murdock named his mother, Annie Lois Walker, the appellant in this action, as the primary beneficiary. On November 8, 1980, Murdock's son, Jeffrey, Jr., the appellee, was born; and on December 23, 1980, Murdock filled out a form on which he designated his newly born son as the primary beneficiary. That form, however, was not mailed to New Orleans by the Bell States East's secretary until February 23, 1981, two weeks after Murdock's death. Hence, both Murdock's son and mother made claims to the proceeds from his life insurance policy. Equitable filed a motion for interpleader, surrendered $61,219.17 to the court,[1] and asked the district court to determine the rival claims. Both parties filed motions for summary judgment. The district court awarded the money to Murdock's son. Murdock's mother, who denies being Jeffrey, Jr.'s grandmother,[2] therefore brings this appeal.
 
 
 3
 The basis for the young son's original motion for summary judgment, the basis of the district court's decision, and the argument stressed in the son's brief is simply that Murdock intended to name his son as primary beneficiary and that he did all he could do to effectuate that change. There was evidence presented to the district court which persuasively attested to Murdock's intent. That evidence consisted of several affidavits which the appellee attached to its motion for summary judgment. One of the affidavits was a statement from Murdock's supervisor at Western Electric. He recalled seeing Murdock fill out a card on which he named his newly born son as the primary beneficiary, and he remembered Murdock's telling him that he wanted his son, and not his mother, to be the primary beneficiary of the policy. Walker did not produce any evidence whatsoever to refute the facts attested to in the affidavits.[3]
 
 
 4
 The closest Annie Lois Walker now comes to denying that Murdock intended to name his son as the beneficiary is a short paragraph in her reply brief which quotes the wife Stevonne Murdock's answer to an interrogatory. Yet the quoted answer was addressed to a question which had absolutely nothing to do with whether Murdock had ever changed the named beneficiary of his policy.[4]
 
 
 5
 Walker urges us to reverse the district court on the ground that the State of Mississippi requires strict adherence to the terms of the life insurance policy, and that in this case those terms were not complied with insofar as the change of beneficiary card was not on file in New Orleans at the time of Murdock's death. In other words, the appellant asks us to thwart the manifest intent of Murdock to name his son as beneficiary merely because Murdock's employer was remiss in mailing a card to New Orleans.
 
 
 6
 Contrary to appellant's assertions, however, Mississippi is not a "strict compliance" state. In Faulkner v. Faulkner, 192 Miss. 358, 5 So.2d 421 (1942), a case cited by both sides in this dispute, the Mississippi Supreme Court announced that "the intent of the insured should be given full weight." Faulkner, supra, 5 So.2d at 422. Formalities in insurance contracts ordinarily exist to protect the insurance company, ibid, not the named beneficiary, for beneficiaries have no rights until the insured dies. See Bonds v. Bonds, 409 So.2d 704 (Miss.1982).
 
 
 7
 Cases cited by the appellant to prove that Mississippi requires strict compliance show no such thing. They prove, if anything, quite the opposite. In Thompson v. Weems, 111 F.2d 566 (5th Cir.1940), it is true that the insured's change of beneficiary was disallowed, but the sole reason was that the change was executed on a Sunday, a violation of the state's Sunday laws. No one ever denied that the insured had a right to change his named beneficiary, but, this Court emphasized, "he did not have the right to make [the change] on Sunday, which is the decisive point on this appeal." Thompson, 111 F.2d at 567 (emphasis added). Nor does John Hancock Mutual Life Ins. Co. v. Dutton, 585 F.2d 1289 (5th Cir.1978), support the argument for which it is cited. In Dutton, the insured failed to conform to the requirements for changing his beneficiary, but the critical finding of the district court was that the insured had not intended to change his beneficiary. This Court refused to disturb that conclusion, stating that "in light of the evidence adduced at the hearing, the finding that Mr. Scheley did not intend to [change] his beneficiary was not clearly erroneous." Dutton, supra, at 1297.
 
 
 8
 One case cited by the appellant does hold that the terms of a policy must be strictly complied with. Home Life Ins. v. Chandler, 402 So.2d 350 (Miss.1981). But that case has nothing to do with a dispute between rival claimants. Rather, the insurance company sought to avoid paying any benefits at all on the grounds that the supposedly insured party was really not insured since he failed to comply with the terms of the insurance agreement. That case is clearly not analogous to this one.
 
 
 9
 Murdock did everything he could do to change the named beneficiary of his policy. There was no controversy of fact that Murdock intended to designate his new born son as the primary beneficiary. Hence, summary judgment in young Jeffrey's favor was justified. Our review of the record has convinced us that the judge was entitled to conclude that Murdock intended to have Jeffrey, Jr., his son, named as the primary beneficiary and that he did everything he could do to so name him. Accordingly, the decision of the district court was correct.
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 $61,219.17 represents the principal amount owed by Equitable on Murdock's policy plus voluntary interest less $1,000 which was kept by Equitable, pursuant to 28 U.S.C. § 1335, to cover reasonable attorney's fees, costs, and expenses
 
 
 [2]
 This is a confusing point, yet it is significant because we suspect, as did the District Judge, that this case is in court simply because of familial dissension. The following excerpt from the hearing on the motion for summary judgment points that up:
 MR. LYONS: I represent Annie Lois [Walker], who is the deceased's mother....
 THE COURT: The deceased's mother?
 MR. LYONS: She does not consent to being called the grandmother [the adverse claimant] for the very fact that [Jeffery Murdock, Sr.] did not marry the purported mother of that child until after that child was born, and my client--the mother left the deceased the day before he burned up in a fire, and they feel very bitter....
 THE COURT: The deceased's mother is not the child's grandmother?
 MR. LYONS: That's correct, Your Honor.
 THE COURT: Well, it was the child's grandmother, too?
 MR. LYONS: There is some question as to that, Your Honor....
 THE COURT: What's the relationship between this child and the mother of the insured?
 MR. LYONS: It's a questionable relationship.
 THE COURT: Questionable?
 MR. LYONS: Yes, sir. I guess that's the best way to say it. There is a question.
 THE COURT: I just wonder what difference it would make if this woman was really, truly, and honestly the grandmother of this child, whether it went to the child or to the grandmother?
 
 
 [3]
 Walker now claims also that the affidavits upon which the court relied must be stricken as unfair surprise. The affidavits were filed on October 21, 1982. The hearing was held on November 9. Walker's counsel thus had more than two weeks in which to recover from his astonishment and produce countervailing evidence. As we have stated, no such evidence was introduced. We also point out that Walker's counsel made no formal objection to the introduction of the affidavits
 
 
 [4]
 Indeed, the attempt by Walker to use Stevonne Murdock's answer to the interrogatory to suggest that Jeffrey, Sr. did not intend to name his son as primary beneficiary is a distortion of the evidence. The question propounded to Jeffrey Jr.'s mother was:
 Please state each and every statement made by the deceased Jeffrey Allen Murdock, regarding selection of Stevonne Lucille Murdock as contingent beneficiary of said policy.
 Answer: Jeffrey Murdock told me that he had named his mother as first beneficiary and me as contingent beneficiary...
 All that answer proves, of course, is that when Jeffrey Sr. first named his mother as primary beneficiary, he told his wife that he had done so. It hardly establishes that Murdock did not later intend to change the beneficiary. In fact, in response to a different question Jeffrey's mother did recall that: "In December of 1980, he [Murdock] told me that he had changed the beneficiary but did not tell me who he changed it to." See answer to cross-plaintiff's interrogatory question # 6.