Jeffrey A. MURDOCK, Jr., A Minor, By and Through His Guardian and Next Friend, Jean SMALLMAN Plaintiff,

v.

AT & T TECHNOLOGIES, INC. Defendant.

Civ. A. No. S86–0167(R).

United States District Court, S.D. Mississippi, S.D.

Jan. 19, 1987.

W. Eugene Henry, Biloxi, Miss., for plaintiff.

Robert Alan Byrd, Biloxi, Miss., for defendant.

## MEMORANDUM OPINION

GEX, District Judge.

This cause is presently before this Court on the defendant AT & T Technologies' motion for summary judgment. The following findings of fact and conclusions of law are entered by this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Jeffrey A. Murdock, Sr. (hereinafter "Murdock") was the spouse of Stevonne Smallman Murdock (hereinafter "Stevonne"). In November, 1980, the couple gave birth to a son named Jeffrey A. Murdock, Jr. (hereinafter "Jeffrey"). Jeffrey's maternal grandmother is Jean Smallman and his paternal grandmother is Anne Lois Walker (Murdock's mother).

Murdock was employed by Western Electric Company, Inc. (hereinafter "AT & T")[1] in its distribution center in Jackson, Mississippi, from June 23, 1980 until his accidental death in a fire on February 8, 1981.

At the commencement of his employment with AT & T, Murdock received material on the corporation's group life insurance program which was underwritten by the Equitable Life Assurance Society of the United States (hereinafter "Equitable"). The group life insurance program included basic coverage in an amount equivalent to one year's pay rounded to the next higher $1,000.00 paid for by AT & T and supplementary coverage by which the employee was permitted to purchase additional group life insurance.

The Summary Plan Description provided to Murdock, as well as the Certificate of Insurance issued by Equitable, contained a statement prohibiting an action at law or equity to be brought against the insurance company prior to the expiration of sixty days after proof of claim had been filed.

---

1. As part of the divestiture of local telephone companies from American Telephone & Telegraph Company, Western Electric Company, Inc., in January, 1984, changed its name to AT & T Technologies, Inc.

Murdock exercised his option to purchase supplementary group life coverage in June, 1980 by signing what was commonly referred to as a "Tel–2" form which authorized payroll deduction for the coverage. On the reverse side of the card-form he designated his mother, Annie Lois Walker, as his primary beneficiary. These actions took place some three months before the November, 1980 birth of his son, Jeffrey.

On December 23, 1980, H.C. Buster, Jr., Murdock's supervisor, advised Murdock about the new group life insurance options and other benefits which would become available on January 1, 1981, to employees with six months of service. Murdock then decided to purchase supplementary coverage in the amount of $30,000.00, or twice the amount of his basic group life insurance coverage. To confirm this choice and to authorize the payroll deduction for the additional coverage he filled out another Tel–2 card-form and returned it to Buster the same day. On the reverse side of this card-form, Murdock designated Jeffrey as his primary beneficiary.

The effect of his completion of this Tel–2 form was to increase Murdock's insurance coverage effective January 1, 1981. Therefore, after his death on February 8, 1981, his beneficiary was eligible to receive group life insurance benefits in the amount of $60,000.00; or $15,000.00 in basic benefits; $15,000.00 in accidental death benefits; and $30,000.00 (twice the basic benefits) in supplementary benefits.

Employee benefit matters for the distribution center's employees were coordinated by AT & T employees in New Orleans, Louisiana. Clerks at the distribution center in Jackson were instructed to collect the Tel–2 card forms and, after collecting them from all employees, to forward them to New Orleans. Murdock's Tel–2 card-form was placed on the desk of Patricia Clincy in the Jackson office. The card remained on Patricia Clincy's desk until she learned of Murdock's death on February 8, 1981. On February 9, 1981, she forwarded Murdock's Tel–2 card-form, as well as all of the completed Tel–2 card-forms she had in her possession, to New Orleans.

After learning of Murdock's death, employees in the employee benefits office in New Orleans immediately began to follow the procedures by which heirs of an AT & T employee receive the various benefits to which they are entitled. Lyons, the benefits supervisor in that office, located Murdock's original Tel–2 card-form, which designated Annie Lois Walker as his primary beneficiary. On February 11, 1981, a letter was sent from the New Orleans office to Annie Lois Walker, along with which was enclosed proof of claim forms for Murdock's group life insurance benefits. On February 13, 1981, the Tel–2 card-form which increased Murdock's group life insurance coverage and which designated Jeffrey as Murdock's beneficiary was received by the New Orleans employee benefits office.

AT & T was immediately contacted about the proceeds of Murdock's group life insurance by an attorney representing Stevonne Murdock as Jeffrey's guardian and next friend. As requested, AT & T identified the insurance carrier and mailed proof of claim forms to Stevonne Murdock's attorney.

On May 19, 1981, AT & T sent Jeffrey's proof of claim and Mrs. Walker's proof of claim to Equitable. Less than one month later, Stevonne Murdock commenced Civil Action No. S81–0289(C) in this Court against Equitable for the proceeds of Murdock's group life insurance.

When the aforementioned action was commenced, Equitable had not completed its investigation of the competing claims. Equitable interpleaded Mrs. Walker as a counter-defendant and paid $61,219.17 into the registry of this Court. "$61,219.17 represents the principal amount owed by Equitable on Murdock's policy plus voluntary interest [$2,219.17] less $1,000.00 which was kept by Equitable pursuant to 28 U.S.C. § 1335, to cover reasonable attorney's fees, costs, and expenses." *Murdock v. Equitable Life Assurance Society of the United States,* 714 F.2d 474, 475 n. 1 (5th Cir.1983).

At the request of Jeffrey's counsel, AT & T's employees, on or about June 1, 1982,

through affidavits, provided evidence for Jeffrey in his action for Murdock's group life insurance proceeds. Hugh C. Buster, Jr., Murdock's supervisor, described seeing Murdock complete the Tel–2 card-form designating Jeffrey as his beneficiary. Patricia Clincy described collecting the forms and sending them to AT & T's employee benefits office in New Orleans. Fay Lyons described the handling of Murdock's death benefits by the employee benefits office in New Orleans. The affidavits prepared by these employees were submitted in support of Jeffrey's motion for summary judgment.

This Court granted Jeffrey's Motion for Summary Judgment and awarded the proceeds of Murdock's group life insurance to Jeffrey. Its judgment was affirmed by the United States Court of Appeals for the Fifth Circuit. *Id.*

The plaintiff, Jeffrey A. Murdock, Jr., by and through his maternal grandmother, Jean Smallman, acting as his guardian and next friend, commenced the present action in the Circuit Court of the Second Judicial District of Harrison County, Mississippi, in January, 1986, alleging neglect on the part of certain employees of AT & T in the receipt and transmittal of the beneficiary designation card. The cause of action was subsequently removed to federal court.

The complaint alleges that certain AT & T employees failed to act with ordinary care in processing the change of beneficiary forms in a timely fashion thereby forcing the plaintiff to incur legal expenses in the amount of $24,000.00. This legal expense is contended to be the direct result of the negligence of the defendant and represents the only damages sought by the plaintiff in the present action.

## CONCLUSIONS OF LAW

As stated previously, the Summary Plan Description provided to Murdock, as well as the Certificate of Insurance issued by Equitable, contained a statement prohibiting an action of law or equity to be brought against the insurance company prior to the expiration of sixty days after the proof of claim had been denied.

On May 19, 1981, the proof of claim forms completed by Mrs. Walker and Jeffrey's mother, Stevonne Murdock, were forwarded to Equitable. What subsequently followed is an exemplar of our litigious society.

In disregard of the Summary Plan Description and Certificate of Insurance, Stevonne Murdock filed a lawsuit less than a month after the proofs of claim were filed. The lawsuit was filed even though Equitable had not denied Jeffrey's claim, nor given any indication, at least to AT & T, that it intended to do so. If Stevonne Murdock had simply waited a few weeks, or her attorney had contacted Equitable before filing suit, or even contacted AT & T's benefit office for assistance in dealing with Equitable, the legal fees sought here might not have been incurred, assuming that Stevonne Murdock's contingent fee arrangement with her attorneys did not arise until an action was commenced against Equitable.

There can be little doubt that Equitable, given adequate time, would have recognized Jeffrey as the beneficiary of Murdock's insurance, because when Equitable paid the policy proceeds into Court, it paid $60,000.00 not $45,000.00. $30,000.00 of that amount represented the $15,000.00 in basic coverage and $15,000.00 in accidental death coverage that AT & T provided for all employees; the remaining $30,000.00 represented Murdock's supplementary insurance coverage. Murdock had increased the amount of his supplementary insurance from $15,000.00 to $30,000.00 on December 23, 1980, *on the very same card* on which he had designated Jeffrey as the beneficiary. When Equitable paid $60,000.00 into this Court, it admitted the validity of Murdock's second Tel–2 form which constituted Murdock's election of additional supplementary coverage and necessarily admitted that Jeffrey was entitled to the proceeds.[2]

---

2. Of course, once the lawsuit was commenced, the contingency fee was earned and the damages sought here were incurred whether Eq-uitable allowed Jeffrey's claim immediately or not.

Therefore, the $24,000.00 in attorney fees incurred by the plaintiff appear to be the result of a precipitous rush to court which could have been avoided.

In any respect, no Mississippi statutory or case law has been cited by the plaintiff as an authority to substantiate his claim for attorney fees. The most analogous case to the present action actually reached a conclusion barring the relief claimed by the present plaintiff.

In *Home Telephone Co. v. Darley*, 355 F.Supp. 992, 1001–1002 (N.D.Miss.1973), aff'd per curiam, 489 F.2d 1403 (5th Cir. 1974), the plaintiff, like the plaintiff in the instant case, was seeking attorney fees incurred in an earlier litigation that allegedly related to some breach of duty by the defendant. In contrast to the instant suit, however, the conduct of the defendant, Home Telephone, had caused the plaintiff to have a judgment taken against it in the earlier action—which involved a breach of a merger agreement. The Home Telephone plaintiff obtained a judgment against the defendants in the second action (former officers of the plaintiff company who had caused it to breach the merger agreement) for the amount of the judgment in the earlier litigation plus interest, but the court specifically refused to award the plaintiff its litigation expenses, including attorney fees, for the earlier litigation. The Court said:

> The assessment against an adversary of attorney fees and costs incurred in litigation is not ordinarily allowed in Mississippi. The established rule is that such items are proper elements for the court to consider only if punitive damages are recoverable, *Kalmia Realty & Ins. Co. v. Hopkins*, 163 Miss. 556, 141 So. 903 (1932), and the facts must establish the commission of a gross and willful wrong, *Cooper v. USF & G*, 186 Miss. 116, 188 So. 6 (1939). Exceptional circumstances to justify the allowance of punitive damages, and hence litigation expenses, do not appear in this case.

355 F.Supp. at 1001–1002.

*A fortiori*, in the instant suit, where the defendant provided the affidavits that as-

sisted the plaintiff to win the earlier litigation it should not have to pay attorney fees for the earlier litigation when the *Home Telephone* defendant did not have to pay such fees even though its conduct had been the cause of the judgment against the plaintiff, Home Telephone, in the earlier litigation.

In addition, the plaintiff has alleged only negligence contending that AT & T breached a duty to act with ordinary care simply because a clerical employee in Jackson did not mail a form to New Orleans earlier. Under Mississippi law, attorney fees are not recoverable unless the facts also support an award of punitive damages. "[I]n the absence of statute or contract providing expressly therefor, or proof sufficient to support an award of punitive damages, there can be no recovery of attorney fees." *Stanton & Associates, Inc. v. Bryant Construction Company, Inc.*, 464 So.2d 499, 502 (Miss.1985). "[A]ttorney's fees may not be awarded as damages in a case unless punitive damages are also proper." *Gardner v. Jones*, 464 So.2d 1144, 1150 (Miss.1985). "Attorney's fees are not recoverable as an element of damages unless the infliction of punitive damages is justified." *Aetna Casualty & Surety Company v. Steele*, 373 So.2d 797, 801 (Miss.1979). "[T]he rule in the absence of statute is that [attorney's fees] are not recoverable unless the facts are of such gross or willful wrong as to justify the infliction of punitive damages." *Bellefonte Insurance Company v. Griffin*, 358 So.2d 387, 391 (Miss.1978).

Even if AT & T's clerk was careless in not sending the new forms from Jackson to New Orleans more promptly, such carelessness does not rise to the level of gross and reckless conduct required to award punitive damages. The form was not lost or destroyed as a result of the clerk's action, and AT & T did nothing to deny Jeffrey's claim to the insurance proceeds. Indeed, AT & T did what it could to support Jeffrey's claim by providing the affidavits to show that Jeffrey's claim was valid.

Therefore, for the reasons discussed in this Opinion, the Court finds that the defendant AT & T's motion for summary

judgment is well taken and should be granted.