**Earl BRYAN, Plaintiff-Appellee,**

**v.**

**CARGILL, INC., Defendant-Appellant.**

**No. 83–1346**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1984.

Sanders, Saunders, Brian, Finney, Thomas & Smith, Ronald D. Nickum, Amarillo, Tex., for defendant-appellant.

Kolander & Hamilton, R.C. Hamilton, Amarillo, Tex., for plaintiff-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

This is a Texas diversity case. The defendant ("Cargill") appeals from a monied judgment, based upon a finding by the jury upon a special issue submitted to it that Cargill had converted the plaintiff Bryan's wheat that had been shipped to it. Cargill's sole contention on appeal is that the district court erred in failing to submit to the jury the defendant's cause of action as proposed by ten special issues as requested by it. We affirm, finding no abuse of discretion in the failure to submit the ten special interrogatories proposed by the defendant Cargill, because the special interrogatory submitted to the jury, when read in conjunction with the special instructions accompanying it, fairly and clearly presented the contested issues and the ultimate question of fact to the jury.

The facts show:

The plaintiff Bryan maintained a grain elevator in Kansas. Bryan shipped certain grain by independent truckers (the "Missouri truckers") to the defendant Cargill's storage facility in Texas, with the intention that it be credited to Bryan's open storage account. Instead, allegedly based on Bryan's manager's misleading instructions, Cargill credited the grain to the account of a third party ("Transco"), now bankrupt.[1]

Bryan's claim against Cargill is based upon the latter's conversion of Bryan's wheat.

Cargill's defense to the claim is based upon its reliance upon instructions allegedly given its agent by Bryan's manager in a telephone conversation before the disputed shipments were made. Intending to prevent future confusion, Bryan's manager had cautioned Cargill's agent that he was shipping Bryan's own wheat from his Kansas grain elevator at the same time as Transco was shipping *its* wheat from the same grain elevator. Both parties agreed, in essence, that Bryan's manager had told Cargill's agent that grain coming in on the trucks of Beasley, an independent trucker, was for Bryan's open storage account, and that grain coming in on "Transco trucks" was for the account of Transco. Both parties knew that Transco operated its own trucks, with its name clearly printed on the doors of the cabs.

However, at the time Transco was also using the services of some Missouri independent-contractor truckers, due to a bumper grain harvest. Due to the same reason, when Transco finished shipping its grain, the plaintiff Bryan also employed these same Missouri truckers to complete the shipment of its own grain between July 23 and August 2, 1979. Both parties agree that the telephone conversation did not touch on the use of the Missouri truckers.

Cargill's agent, based on his conversation with Bryan's manager and because subsequently thereafter Transco used the Missouri truckers, assumed that these latter shipments of Bryan wheat by the Missouri truckers were also by "Transco" trucks. Cargill therefore credited Bryan's wheat to Transco's account.[2] Cargill contends it was not subject to liability for conversion of Bryan's wheat under these circumstances. As summarized by the defendant Cargill in

---

1. Transco then sold the grain to Cargill, although this circumstance is immaterial to the present facts.

2. Nevertheless, although Cargill's agent disputed this portion of the telephone conversation, Bryan's manager had also stated the outbound scale tickets would identify the grain as shipped, respectively, for Bryan's storage account or for the Transco wheat contract; and the undisputed evidence of the Missouri truckers is that they were given the outbound scale tickets of Bryan wheat to give to Cargill and were told to inform Cargill that the wheat was for Bryan's account, and that they did so.

its brief (p. 4): "The entire thrust of defendant's case was that [the plaintiff Bryan's manager] instructed Cargill how to handle the grain upon arrival and when the situation changed at [Bryan's] end, he failed to notify Cargill."

## I.

The sole issue raised by the defendant Cargill consists of the allegedly erroneous refusal of the district court, over objection, to submit to the jury ten special issues as requested by this defendant. Cargill argues that the district court, although submitting the plaintiff Bryan's conversion theory of the case by special issue to the jury, failed to submit the defendant Cargill's theory as requested. Cargill contends that the district court erred, having exercised its discretion to submit the case under special interrogatories, Fed.R.Civ.P. 49(a), in failing to submit an "issue of fact raised by the pleadings or by the evidence," *Id.*, as requested by a party, who objected to the denial of the request. *See, e.g., Huddleston v. Herman and MacLean,* 640 F.2d 534, 549–50 (5th Cir.1981) and *Duke v. Sun Oil Company,* 320 F.2d 853, 865 (5th Cir.1963).

■ Rule 49(a) allows special verdicts at the discretion of the trial court. The trial court also has discretion over the nature and scope of the issues submitted, a discretion reviewable only for abuse. *Loffland Brothers Co. v. Roberts,* 386 F.2d 540, 546 (5th Cir.1967), *cert. denied,* 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830 (1968). As we recently reiterated in *J.C. Motor Lines, Inc. v. Trailways Bus, Inc.,* 689 F.2d 599, 603 (5th Cir.1982) (finding no abuse in the failure to submit certain special interrogatories requested by the defendant, in addition to finding the issue not properly preserved for review):

> This Court has consistently held that a trial judge has considerable discretion to frame the issues involved in a case. *Dreiling v. General Electric Co.,* 511 F.2d 768, 774 (5th Cir.1975); *Abernathy v. Southern Pacific Co.,* 426 F.2d 512, 514 (5th Cir.1970); *Grey v. First National Bank of Dallas,* 393 F.2d 371, 385 (5th

Cir.), *cert. denied,* 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968). On this basis, appellate review of the Trial Court's use of special interrogatories is confined to whether such use was an abuse of discretion. *Dreiling,* 511 F.2d at 774; *Abernathy,* 426 F.2d at 514. The Court, in *Dreiling,* outlines the standards to be applied in reviewing the Trial Court's use of special interrogatories:

> In prior cases we have emphasized several factors in determining the adequacy of forms of special interrogatories: (i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury, (ii) whether the submission of the issues to the jury was 'fair', and (iii) whether the 'ultimate questions of fact' were clearly submitted to the jury. (citations omitted)

*Dreiling* at 774.

■ These criteria are applied in the light of several holdings that demonstrate their meaning. "[T]he judge must submit all material issues raised by the pleadings and the evidence," *Simien v. S.S. Kresge Co.,* 566 F.2d 551, 555 (5th Cir.1978), although none must be submitted twice through redundant special interrogatories, *Angelina Casualty Co. v. Bluitt,* 235 F.2d 764, 770 (5th Cir.1956). The limits on the submission requirement were recently outlined:

> There is no doubt that a judge must clearly and properly instruct the jury with regard to the resolution of key issues in a given case. However, there is no basis for [appellant's] apparent assumption that because an issue is important to the outcome of a case, the jury must be instructed to supply a specific answer informing the court how they resolved that one issue. No party is entitled to a special verdict on each of the multi-faceted, multitudinous issues essential to the resolution of a given case.

*Miley v. Oppenheimer & Co.,* 637 F.2d 318, 334 (5th Cir.1981).

## II.

In the instant case, the district court, in addition to general instructions as to weighing the evidence of witnesses, etc., also submitted to the jury a special issue, with accompanying special instructions for its decision. The special instructions relevantly concluded:

> The term "conversion" means the exercise or dominion over the personal property of another without the consent of the owner and to the exclusion of the owner's right of possession and use.
>
> Cargill says that it did not convert the wheat in question. Cargill contends that John Stutz, acting as agent for [the plaintiff Bryan's] Parker Grain Company, consented by instructing Don Vogt [Cargill's agent] to credit wheat delivered on Wade Beasley and Sons trucks to Parker Company's account for storage and to credit wheat delivered on Transco trucks to Transco. Cargill contends that its agents relied on those instructions and followed them in crediting the wheat in question to Transco. Cargill contends that its failure to credit wheat shipped to it by Plaintiff to Plaintiff's open storage account was a direct result of Plaintiff's instructions and failure to later change those instructions.
>
> The burden of proving every element of conversion is on the Plaintiff.

With these special instructions, the district court submitted the following special issue to the jury:

> Do you find from a preponderance of the evidence that Cargill, Incorporated, converted Plaintiff's wheat that was shipped to Cargill, Incorporated, by Plaintiff beginning July 23, 1979, and ending August 2, 1979?
> ANSWER: "We do" or "We do not"
> ANSWER: _____
> [The jury found: "We do"]

Prior to the submission to the jury, the district court submitted its proposed special issue and special instructions to opposing counsel. Cargill's counsel objected only to the failure of the district court to include the ten special issues submitted by it to the jury, not to the wording of this special issue as above submitted. Cargill's special issues nos. 1 through 9 submitted separate elements of Cargill's factual defense and, Cargill's special issue 10, proposed in the alternative, concerned in broad form these same factual elements, should the district court prefer a single instead of piecemeal defense special issue(s). The requested summary-type special issue no. 10 was as follows:

> Do you find from a preponderance of the evidence that John Stutz [the plaintiff Bryan's manager] gave certain instructions to Don Vogt [the defendant Cargill's agent] on how to identify and determine ownership of wheat shipped from the Parker [Bryan's] facility to the Cargill facility in July and August of 1979, and that Cargill employees relied upon those instructions in crediting the wheat in controversy in this case to Transco's contract account, and further that John Stutz failed to give notice to any employee who had authority to receive and act upon such notice that further shipments from Parker Grain [Bryan's company] from July 23, 1979, onward should be credited to Parker Grain Company's open storage account?

## III.

Balanced against the general standards for appellate review set forth in I *supra*, we are unable to say that the district court abused its discretion in refusing to submit Cargill's special issues to the jury. The special interrogatory submitted to the jury, read in conjunction with the special instructions accompanying it, adequately presented the contested issues to the jury sought to be submitted, somewhat duplicatively although with somewhat more detail, by the defendant Cargill's requested special issue no. 10. As so read, it fairly submitted to the jury the defendant's factual defense, and it clearly submitted to the jury the ultimate question of fact.

Finding no abuse of discretion in the district court's failure to submit the special

issues requested by Cargill, the defendant-appellant, we AFFIRM.

AFFIRMED.