**Maudie P. BLIZZARD, Plaintiff,**

v.

**NEWPORT NEWS REDEVELOPMENT AND HOUSING AUTHORITY, Defendant.**

**Civ. A. No. 82–167–NN.**

United States District Court, E.D. Virginia, Newport News Division.

Oct. 2, 1985.

Randolph G. Johnson, Hill, Tucker & Marsh, Richmond, Va., for plaintiff.

C.V. Spratley, Jr., Newport News, Va., Hill B. Wellford, Jr., Richmond, Va., for defendant.

## ORDER

DOUMAR, District Judge.

The plaintiff, Maudie P. Blizzard, brought this action against the Newport News Redevelopment and Housing Authority pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that she was fired from her job in retaliation for filing a complaint with the Equal Employment Opportunity Commission. On April 12, 1984, this Court, in the liability phase of this bifurcated proceeding, found for the plaintiff and referred the "remedies" question to a Special Master pursuant to 28 U.S.C. § 636(b)(2) and F.R. Civ.P. 53.

The Special Master's Report and Recommendation was submitted on May 12, 1985. This report recommended that the plaintiff receive $36,054 in back pay, retirement credits through April 30, 1984, front pay of $9,703, attorney's fees of $26,872.50 plus $100.00 per hour for services rendered through the conclusion of this litigation, $1,993.52 in expenses and any other reasonable costs incurred during this litigation.

The defendants have objected to this report and seek to modify its terms. They assign three errors of law to the Master. They claim that he misconstrued this Court's opinion, in the liability phase of the

case, leading to an award of back pay to which the plaintiff was not entitled. They also claim that the Master's method for computing back pay was erroneous and that certain deductions should have been made from any award of back pay.

## I.

█ The defendant claims that under *Smallwood v. United Airlines, Inc.,* 728 F.2d 614 (4th Cir.1984), it should have been allowed to put on evidence about the course of action it would have pursued had there been no unlawful retaliation. In this case, they apparently claim that they would have fired the plaintiff in any case on or shortly after the date of her termination because of her poor attitude.

In *Smallwood,* the defendant airline refused to process the plaintiff's employment application because it disclosed that he was forty-eight years of age. The plaintiff sued the airline for violating the provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* In preparing for trial, the defendant discovered that the plaintiff had allegedly defrauded his previous employer and had been discharged for that reason.

At trial, the defendant sought to prove that it would have discovered this alleged fraud had it processed the plaintiff's application and would have rejected him even in the absence of discrimination. While proof of this fact would not have affected the question of liability, the defendant claimed that it would affect the amount of damages to which the plaintiff was entitled. In essence, the defendants claimed that *if they had known all the facts at the time the decision not to hire was made,* no discrimination would have occurred because the application would have been rejected for legitimate reasons. Since the plaintiff would not have been hired in any case, the Fourth Circuit held that no back pay should have been awarded.

In the liability phase of this case, this Court found that "the Authority *could have fired* the plaintiff any time following the initial filing of the EEOC complaint ...

for legitimate, nondiscriminatory reasons." Opinion of April 12, 1984 at 19 (emphasis added). The defendants seize upon this language and claim, under *Smallwood* that they should be allowed to show that they *would have fired* the plaintiff for legitimate reasons, either on the date of her actual discharge or shortly thereafter.

The remedy provisions of 42 U.S.C. § 2000e–5(g) make it clear that "[n]o order of the court shall require ... the payment ... of ... back pay ... if [the plaintiff] *was* suspended or discharged for any reason other than discrimination [or retaliation]." (emphasis added). The defendant asserts that back pay cannot be awarded if the plaintiff *could* have been suspended or discharged for non-proscribed reasons. This assertion is simply not supported by the language or purpose of the statute. Under Title VII, "back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries through past discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 422–23, 95 S.Ct. 2362, 2373–74, 45 L.Ed.2d 280 (1975). To allow a defendant, who consciously rejected all legitimate, non-discriminatory options open to him in favor of a retaliatory one, to escape back pay liability because he *might* have acted differently would frustrate the purpose of eliminating discrimination in employment.

Neither is the defendant's position supported by *Smallwood.* On the date of the plaintiff's discharge, the defendants had all of the facts necessary to base her termination on legitimate factors. Instead, they fired her for refusing to withdraw her EEOC charge. This Court found in the liability phase of this case that "the Authority would have continued to tolerate the problems created by the plaintiff if she would just retract the charge...." Order of April 12, 1984 at 20. In sum, the defendant urges the Court to find that while the plaintiff's behavior up until February 7, 1982 was not sufficiently belligerent to in-

duce them to fire her on that date, they would have been so motivated at some subsequent date, notwithstanding their promises of continued employment. This Court has already concluded otherwise and *Smallwood* does not mandate that the defendant be allowed to put on such proof. If the plaintiff had committed some dastardly act of which the Authority was unaware on February 7, 1982, a *Smallwood* situation might be present. Here defendant, in reality, seeks to relitigate an issue it has already lost.

## II.

The Authority also claims that the Master computed the amount of back pay in an erroneous fashion. The Master awarded back pay from the February 7, 1980 discharge date to April 30, 1984, concluding that the defendant and plaintiff would have "parted ways" by that date. Report and Recommendation at 8. The sum derived by reference to these dates was then halved because the plaintiff had failed to exercise reasonable diligence in her attempt to mitigate damages. Report and Recommendation at 3.

The record shows that the plaintiff's efforts to secure employment following her discharge by the Authority were limited and of diminishing intensity. The plaintiff was required to apply for employment in order to receive unemployment compensation and this she did. By the end of 1980, however, her unemployment benefits were exhausted and apparently so were her job-seeking efforts. The defendant carried its burden of proof[1] by demonstrating that the plaintiff failed to apply for a variety of positions for which she was well suited, that the plaintiff never enlisted the aid of an employment agency, never prepared a resume, and never wrote a letter in connection with a potential job. Since 1980, the plaintiff has apparently made no written application for employment. This Court

therefore finds as a fact that after December 31, 1981, plaintiff failed to use reasonable diligence in seeking to mitigate the amount of back pay otherwise allowable.

■■■■ Under 42 U.S.C. § 2000e–5(g), "[i]nterim earnings or amounts earnable with reasonable diligence ... shall operate to reduce the back pay otherwise allowable." Plaintiffs, therefore, have an affirmative duty to mitigate the amount of back pay by seeking suitable employment. *Cf. Cline v. Roadway Exp., Inc.*, 689 F.2d 481 (4th Cir.1982) (Age Discrimination in Employment Act case). As noted, the evidence here demonstrates that after December 1980, the plaintiff made little or no effort to secure employment although positions in her field were evidently available.

For this reason, this Court is convinced that an award of back pay for any period beyond December 31, 1980 would be inappropriate. Therefore, plaintiff should receive $13,939.00 in back pay.[2]

The Master also recommended an award of front pay "for a period of sufficient duration for plaintiff to obtain other similar employment if she is sufficiently serious about it." Report and Recommendation at 11. It seems clear from the foregoing evidence that the plaintiff had abundant opportunities to seek employment but chose to pursue them in less-than-enthusiastic fashion. In light of this Court's discussion of the back pay issue, it would seem inequitable to require the defendant to pay the plaintiff "front pay".

## III.

■■■ The Authority assigns as error the Master's failure to exclude from the award of back pay certain amounts earned by the plaintiff from part-time employment. As noted *supra*, the language of the act is mandatory; "[i]nterim earnings *shall* operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g). These mo-

---

**1.** The burden is on the defendant to prove that the plaintiff failed to use reasonable diligence in mitigating damages. *See Cline v. Roadway Exp., Inc.*, 689 F.2d 481, 488–89 (4th Cir.1982).

**2.** The parties have stipulated that the plaintiff's earnings between February 7, 1980 and December 31, 1980 would have been $13,939.00.

nies, however, were earned after the December 31, 1980 cut-off date used by this Court for calculating back pay. They cannot, therefore, be properly termed "interim earnings" and will not be deducted from the plaintiff's award.

After weighing the equities in the facts as described, this Court is not inclined to provide the plaintiff with an award greater than the law requires. Consequently, her request for pre-judgment interest is hereby DENIED. See *Cline v. Roadway Exp. Inc.,* 689 F.2d 481, 489 (4th Cir.1982).

 After analyzing the plaintiff's request for attorney's fees in light of the twelve factors set forth in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.1978) *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978),[3] this Court feels that the award of $442.50 for services rendered prior to 1982 (5.9 hours × $75.00) and $26,430.00 for services rendered from January 1, 1982 through December 6, 1984 (264.3 hours × $100.00) is reasonable and appropriate particularly in light of the exemplary manner in which plaintiff's counsel has handled the case. Further, the plaintiff is entitled to $100.00 for each hour of services rendered by her attorney from December 6, 1984 until this litigation is concluded, provided those services are reasonably necessary.

Lastly, the Court accepts the Master's recommendation as to costs and expenses, i.e., $1,993.52 plus reasonable costs incurred from December 6, 1984.

## CONCLUSION

This Court concludes that the plaintiff is entitled to back pay for the period from her discharge on February 7, 1980 through December 31, 1980 when she ceased seriously seeking employment of $13,939.00. The plaintiff is entitled to $26,872.50 in attorney's fees plus $100.00 per hour for services rendered since December 6, 1984. The plaintiff is also entitled to $1,993.52 in costs and expenses plus those incurred since December 6, 1984. In light of the plaintiff's failure to mitigate her damages, and the equities surrounding the facts of this case, the plaintiff is DENIED front pay and pre-judgment interest.

For the expenses and attorney's fees subsequent to December 6, 1984, not set forth by stated amount herein, counsel for plaintiff should apply to this Court within thirty (30) days from the date hereof or within ten (10) days after judgment becomes final, whichever date is later.

IT IS SO ORDERED.

---

**3.** Under *Barber,* the Court should consider (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.