Andrew W. HANSARD,
Plaintiff-Appellee,
Cross-Appellant,

v.

PEPSI-COLA METROPOLITAN BOTTLING CO., INC., d/b/a Pepsi-Cola Bottling Group, Defendant-Appellant, Cross-Appellee.

No. 87-1717.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1989.

Richard E. Lieberman, James M. Gecker, Ross & Hardies, Chicago, Ill., for defendant-appellant, cross-appellee.

Art Brender, Terry M. Casey, Law Offices of Art Brender, Ft. Worth, Tex., for plaintiff-appellee, cross-appellant.

Before GEE, SNEED,[*] and WILLIAMS, Circuit Judges.

SNEED, Circuit Judge:

Pepsi–Cola Bottling Co., Inc. (Pepsi) was held liable for violating the Age Discrimination in Employment Act (ADEA) by discharging and later refusing to rehire Andrew Hansard. Pepsi appeals the jury's verdict on liability and damages. We affirm the district court's judgment on the merits, but we reverse and remand the award of damages. Hansard cross-appeals the district court's refusal to award liquidated damages and prejudgment interest. We affirm the district court's refusal to award liquidated damages, but reverse its refusal to award prejudgment interest. The jurisdiction of the district court rested on 29 U.S.C. § 626 (1982) and 28 U.S.C. § 1331 (1982). This court has jurisdiction under 28 U.S.C. § 1291.

## I.

### FACTS AND PROCEEDINGS BELOW

Hansard was employed by Uncle Joe's Bottling Co. from 1974 until 1979 in Fort Worth, Texas. II Tr. 4, 12. In 1979, Pepsi acquired Uncle Joe's Bottling Co. and Hansard became a Pepsi employee. II Tr. 4, 15, 68–69. For most of his tenure, Hansard worked on a delivery route servicing vending machines. II Tr. 14. In early 1983, the number of stops on Hansard's route decreased, but instead of reducing his hours, Pepsi permitted Hansard to work in the warehouse after his delivery route was finished. II Tr. 22–25, 68–69.

In 1983, Pepsi reorganized its corporate structure, and responsibility for Hansard's job was transferred to a different department. II Tr. 126–27. On June 20, 1983, Hansard met with three members of Pepsi's management: Scott Barth, the regional sales manager; Ms. Michael Miller, the employee relations manager; and Mark Esselman, an employee relations trainee. II Tr. 30–31. Hansard was the only employee invited to such a meeting. II Tr. 166. Hansard testified that Ms. Miller said that Hansard's department was being reorganized and that Hansard would be delivering vending machines and syrup instead of stocking vending machines. Ms. Miller asked Hansard: "Do you think you can handle it [the job]?" II Tr. 32. Earlier Ms. Miller, in a discussion with Barth and Esselman, had questioned Hansard's ability to do the new job. II Tr. 141. Hansard testified that he responded to Ms. Miller: "Yes. I probably could handle it because I have done hard work all my life," but "I would rather not do it if I could get out of it." II Tr. 32. Ms. Miller's version was different. She testified that Hansard refused the job and that she told Hansard that the only alternative was unemployment. II Tr. 132. Hansard testified there was "no way" he

[*] Circuit Judge of the Ninth Circuit, sitting by designation.

refused a job and that "[t]here is nobody in there that I would think that I left [with] the impression that I wouldn't do it, because I was willing to do it." II Tr. 33. Hansard, who was fifty-nine, was replaced by a twenty-five-year-old man. II Tr. 4, 104.

Actions after the meeting increase the confusion. Pepsi's personnel forms indicate Hansard "left work," not that he was either fired or quit. II Tr. 163. Pepsi did not oppose Hansard's application for unemployment benefits, which they were entitled to do if he had quit. II Tr. 172, 178. Finally, this incident occurred only seven months before Hansard's pension rights were to vest. II Tr. 40.

In August 1983, Phillip Garcia, the regional sales manager, sought to create a "checker" position at the Fort Worth Pepsi plant. IV Tr. 10, 12. He asked Charles Miller, the warehouse manager, to fill the position. III Tr. 10, 18–19. Miller contacted Hansard, who was interested in the position, and recommended that Hansard be hired. II Tr. 19–20. Pepsi's Employee Relations Department rejected this request, citing a company policy that forbade rehiring former employees. III Tr. 20–21; IV Tr. 15–16. Miller testified that he had never heard of such a policy. III Tr. 27. Miller further testified that he believed that Hansard was not rehired because of Pepsi's "youth movement." III Tr. 17. Pepsi was unable to produce any documentary evidence of the "no rehire" policy. Later, a twenty-three or twenty-four-year-old man was hired for this position. III Tr. 28.

A jury trial was held in July 1986. The jury returned a verdict in favor of Hansard. R. 531–37. Hansard was awarded $61,149.44 in back wages (wages from the date of termination to trial) and $45,496.40 as front pay (lost wages from the date of trial until Hansard's retirement). The jury also found that Pepsi's actions were willful. *See* R. 532, 535.

The trial court refused to grant Pepsi's motion for J.N.O.V. It declined to award Hansard liquidated damages, however, ruling that by carrying Pepsi's motion for a directed verdict, it could review the sufficiency of the evidence on this issue. R. 784. The court also denied Hansard's request for prejudgment interest on Hansard's back pay award. R. 629–30.

We shall address the following issues in the order and under the headings indicated:

II. DENIAL OF PEPSI'S J.N.O.V. MOTION

   A. *Discharge*

   B. *Age Discrimination*

   C. *Refusal to Rehire*

III. ADMISSION OF CHARLES MILLER'S OPINION

IV. PEPSI'S OBJECTIONS TO THE JURY INSTRUCTIONS

V. THE PROPRIETY OF HANSARD'S MONETARY RECOVERY

   A. *Back Pay*

   B. *Front Pay*

VI. THE ISSUES RAISED BY HANSARD'S CROSS–APPEAL

II.

DENIAL OF PEPSI'S J.N.O.V. MOTION

A. *Discharge*

Pepsi first argues that the trial court erred in refusing to grant its motion for J.N.O.V. because there was insufficient evidence to support the jury's finding that Hansard was discharged. The proper standard for reviewing the trial court's refusal to grant a motion for J.N.O.V. was set out in *Boeing Co. v. Shipman:*

If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting the motion[ ] is proper. On the other hand, if there is ... evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[ ] should be denied....

411 F.2d 365, 374 (5th Cir.1969) (en banc).

The evidence in this case supported neither side overwhelmingly. It follows that there is sufficient evidence to support

the jury's determination that Hansard was discharged. The jury was free to believe Hansard when he testified that he did not refuse any job that was offered to him. II Tr. 32. The fact that Hansard was the only employee with whom such a meeting was held lends circumstantial support to his testimony, particularly in combination with the absence of any Pepsi records to indicate that Hansard quit and Pepsi's failure to contest Hansard's unemployment benefits.

Pepsi relies on *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984), to argue that Hansard never rebutted its evidence that Hansard voluntarily quit. In *Elliott* this court reiterated that if an employer suggests "an adequate, nondiscriminatory" reason for the plaintiff's discharge, "the trier of fact is not free to disregard that explanation without countervailing evidence...." *Id.* at 566.

There was such evidence here. Aside from Hansard's testimony, there were the circumstances of Hansard's meeting, Pepsi's failure to contest payment of unemployment benefits, the ambiguity in Pepsi's own records as to the reason for Hansard's absence, and the inability of Ms. Miller to explain why Pepsi's records failed to indicate that Hansard quit, despite her conclusion that he had. *See* II Tr. 163. This case involved a factual dispute between the witnesses for each party and credibility determinations were made by the jury. *See Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 207 (5th Cir.1986); *see also Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 262 (3d Cir.1987) ("Evaluation of witness credibility is the exclusive function of the jury, and where the only evidence of intent is oral testimony, a jury could always choose to discredit it."), *cert. denied*, — U.S. —, 109 S.Ct. 782, 102 L.Ed.2d 774 (1988). This is as it should be. Pepsi is not entitled to a J.N.O.V. on the issue whether Hansard quit his employment.

### B. *Age Discrimination*

■ Next, Pepsi argues that there was no evidence that Hansard was terminated because of his age. Under the ADEA, the plaintiff must prove that age was a "determinative factor" in his discharge. *Bohrer v. Hanes Corp.*, 715 F.2d 213, 218 (5th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *see Reeves v. General Foods Corp.*, 682 F.2d 515, 523 n. 12 (1982). To repeat, our test is to determine whether "reasonable men" could find sufficient evidence that age was such a factor. *Boeing*, 411 F.2d at 374.

Hansard relied on the testimony of Charles Miller who testified that he believed Hansard was terminated as part of Pepsi's "youth movement." III Tr. 14–17. The challenge to the admissibility of this evidence is discussed in Part III *infra*. Although Charles Miller had no first-hand knowledge of the circumstances leading to Hansard's termination, his opinion rested on his experience at Pepsi, as well as the events surrounding Pepsi's refusal to rehire Hansard. III Tr. 17, 21–23. This court has held that testimony of this sort in some circumstances is probative of age discrimination. *See Reeves*, 682 F.2d at 525. Miller's familiarity with Pepsi's hiring policy and its general corporate youth movement was sufficient basis for his opinion. Further, Miller's opinion about Pepsi's refusal to rehire Hansard clearly had sufficient foundation by reason of his proximity to these events.

■ Two circuits in similar cases have found the mere opinion of another employee, who had no connection with the plaintiff's termination, not to be sufficient by itself to prove age discrimination. *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir.1987); *Gray v. New Engl. Tel. & Tel. Co.*, 792 F.2d 251, 254–55 (1st Cir.1986). We need not address that issue because other evidence also supported an inference of age discrimination. Hansard also relied on a statement by Mark Esselman, who was present at the June 20th meeting. Hansard testified that as the meeting was ending, he remarked "I have done heavy lifting all my life. I am not quite as young as I used to be." Esselman responded, "Yes, it's kind of risky at your age." II Tr.

32–33. Hansard also testified that he believed Ms. Miller's question—asking if he could handle the new position—was an indirect reference to his age. II Tr. 73. Indirect references to an employee's age can support an inference of age discrimination. *Cf. Bienkowski v. American Airlines,* 851 F.2d 1503, 1507 (5th Cir.1988) (upholding a district court's refusal to grant summary judgment, stating "we are unwilling to assume that indirect comments about [plaintiff's] age and adaptability are not possibly probative of unlawful discriminatory intent").

Hansard's termination only seven months before his pension benefits were to vest also supports his claim of age discrimination. II Tr. 42–43. Pepsi responds that its employees present at the June 20th meeting were unaware of the pension issue and that the timing of the meeting was attributable to Pepsi's reorganization. The timing of a termination can raise an inference of discrimination. *See Reeves,* 682 F.2d at 525. The jury was entitled to disbelieve Pepsi's explanation.

Finally, Hansard testified that he believed he was discriminated against because of his age. *See* II Tr. 40. While this testimony alone cannot support an inference of age discrimination, *see Sherrod v. Sears, Roebuck & Co.,* 785 F.2d 1312, 1316 (5th Cir.1986); *Hornsby v. Conoco, Inc.,* 777 F.2d 243, 247 (5th Cir.1985), it does draw strength from the very ambiguity of the June 20th meeting.[1]

■ Hansard's case is not as strong as it might be, but based on this accumulation of circumstantial evidence, "reasonable men could differ" about the presence of age discrimination. We must respect the jury's determination.

### C. *Refusal To Rehire*

■ Pepsi next argues that reasonable men could not believe that its refusal to rehire Hansard was discriminatory. Pepsi contends that its policy of refusing to rehire ex-employees fully explains its decision not to rehire Hansard for the checker position. This explanation, as pointed out earlier, was directly contradicted by Charles Miller's testimony that he believed Hansard was not rehired because of his age. III Tr. 21, 23. Charles Miller also testified that he was unaware of a no-rehire policy that would preclude Hansard's return to Pepsi. III Tr. 27. Perhaps even more probative of Hansard's position is that Pepsi failed to produce any documentary evidence supporting the existence of its alleged policy. Once more we are unwilling to disturb the jury's findings.

### III.

### ADMISSION OF CHARLES MILLER'S OPINION

■ To destroy a major support of the verdict, Pepsi asserts that the trial court's admission of Charles Miller's testimony was error. There is no indication that Miller had any first-hand knowledge of the events surrounding Hansard's termination. III Tr. 14–17. Nonetheless, the trial court's admission of lay opinion testimony will be reversed only for an abuse of discretion. *Scheib v. Williams–McWilliams Co.,* 628 F.2d 509, 511 (5th Cir.1980). Fed. R.Evid. 701 requires only that opinions by lay witnesses be "rationally based on the perception of the witness and ... helpful to ... the determination of a fact in issue."

Courts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the underlying circumstances. In *Torres v. County of Oakland,* 758 F.2d 147, 149–50 (6th Cir.1985), a witness who

---

1. Hansard also argues that Pepsi's emphasis on youth in its advertising suggests that he was a victim of discrimination. Ms. Michael Miller, a former employee of Pepsi's personnel department, testified that this theme was emphasized in the company's college recruitment efforts. II Tr. 146–47. She denied, however, that the advertising theme had any influence on its hiring decisions. II Tr. 147. In *Williams v. General Motors Corp.,* we stated that "the bare fact that an employer encourages employment of recent college ... graduates does not constitute unlawful age discrimination." 656 F.2d 120, 130 n. 17 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Thus, this evidence does not support Hansard's claim.

had participated in the process of filling a supervisor role was permitted to testify that she believed the plaintiff had been discriminated against because of her national origin. In *John Hancock Mut. Life Ins. Co. v. Dutton*, 585 F.2d 1289 (5th Cir.1978), a husband died during an altercation with his wife; John Hancock contended that the death was not accidental. The plaintiff's daughter, who observed the altercation, was permitted to testify that she did not believe that her stepfather thought her mother would shoot him. *Id.* at 1293–94. Similarly, in *Samples v. City of Atlanta*, 846 F.2d 1328, 1334 (11th Cir.1988), a "long time" Atlanta police officer was allowed to testify that there was an unwritten policy encouraging police brutality in the department. The Seventh Circuit, moreover, permitted a witness who had observed an arrest to testify that she believed the arrest was motivated by racial prejudice. *Bohannon v. Pegelow*, 652 F.2d 729, 732 (7th Cir.1981). *See also United States v. Smith*, 550 F.2d 277, 281 (5th Cir.) (coworker permitted to testify that defendant understood CETA regulations he was charged with violating), *cert. denied*, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977); *cf. United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir.1985) ("[C]ourts have been very liberal in admitting witnesses' testimony as to another's state of mind if the witness has had a sufficient opportunity to observe the accused so as to draw a rational conclusion about the intent of the accused.").

Admittedly, Miller's testimony is not strongly supported; Pepsi asserts, accordingly, that, under *Mitroff v. Xomox Corp.*, 797 F.2d 271, 275–76 (6th Cir.1986), Miller's testimony should have been excluded. The Sixth Circuit in *Mitroff* held that the admission of one employee's testimony concerning a statement by an assistant personnel manager that there was age discrimination in the corporation was error. The court held that Rule 701 could not be satisfied since there was no basis for the witness' testimony because the personnel manager denied making the statement and because no other basis for the opinion was disclosed. *Id.* at 276. But, in this case, Mil-

ler's testimony was based on his own experience in the corporation, not a hearsay statement by a third party. *Mitroff* is not controlling.

■ We conclude, with some hesitancy it must be admitted, that the trial court did not abuse its discretion in admitting this testimony. The decisive factor, we readily acknowledge, is that the district court is best suited to determine whether Fed.R. Evid. 701 has been satisfied.

> Basically, Rule 701 is a rule of discretion.... The trier of fact can normally be depended upon ... to pick up the non-verbal signals, which, although absent from the record, indicate fairly clearly when the witness is describing what he saw and when he is describing what he thinks happened; the trier of fact also should generally be depended upon to give whatever weight or credibility to the witness' opinion as may be due.

3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 701[02], at 701–31 to –32 (1988) (footnotes omitted).

## IV.

## PEPSI'S OBJECTIONS TO THE JURY INSTRUCTIONS

■ Pepsi also complains of the district court's refusal to include two jury instructions. The issue is whether the trial court abused its discretion in so refusing. *See Bryan v. Cargill, Inc.*, 723 F.2d 1202, 1204 (5th Cir.1984). Pepsi's first proposed instruction stated that Hansard must prove "that his leaving Pepsi–Cola's employment was the result of a decision by Pepsi–Cola to refuse to allow him to continue working, rather than a result of Plaintiff's failure or refusal to accept an offer of continuing employment." R. 400. The trial court rightfully considered this more favorable to Pepsi than was proper. Instead, the trial court drew upon terms in common every day use and instructed the jury that "discharged" meant "terminated" or "fired." The trial court's refusal was not an abuse of discretion.

■ Pepsi next insists that the trial court erred in submitting the "pretext" theory for Hansard's discharge. This theory was embodied in the charge to the jury that it could "consider whether the employer has engaged in a pattern of practice of discrimination against its older employees." IV Tr. 134. Charles Miller's testimony constitutes some evidence of a pattern or practice of discrimination. The trial court did not abuse its discretion in submitting this theory to the jury.

## V.

### THE PROPRIETY OF HANSARD'S MONETARY RECOVERY

#### A. *Back Pay*

We now confront the issues of damages. Pepsi argues that Hansard was not entitled to back pay after March 1984.

Hansard testified that after his discharge in 1980 that he attempted to find other work. He applied for a variety of positions with no success. II Tr. 46–47, 75, 175–76. In March 1984 Hansard abandoned his job search and began running a booth at flea markets. Hansard testified that he first sold various odds and ends from his home. II Tr. 39. Later, he bought some merchandise for resale. II Tr. 49–50. The flea market operated only on weekends. II Tr. 80. Hansard's flea market booth never turned a profit, and he abandoned it in December 1985. II Tr. 47–51. After December, he stopped looking for work altogether and began receiving Social Security early retirement benefits.

■ The ADEA requires a plaintiff to use reasonable efforts to obtain other employment after he is terminated. *See Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir.1982); *EEOC v. Sandia Corp.*, 639 F.2d 600, 627 (10th Cir. 1980).

Hansard clearly is not entitled to back pay after December 1985 because, by his own admission, he stopped looking for work. A plaintiff may not simply abandon his job search and continue to recover back pay. *See, e.g., Blizzard v. Newport News*

*Redev. & Hous. Auth.*, 635 F.Supp. 23, 26 (E.D.Va.1985); *Weatherspoon v. Andrews & Co.*, 32 Fair Empl.Prac.Cas. (BNA) 1226, 1229 (D.Colo.1983) [1983 WL 577].

Whether Hansard's back pay entitlement terminated after March, 1984, is a closer question. Nonetheless, we believe Pepsi is right. From the record we conclude that a rational trier of fact could not find that Hansard satisfied his statutory duty to mitigate damages by engaging in his flea market business. A plaintiff's decision to become self-employed, alone, does not indicate a lack of reasonable diligence. *See Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005 (3d Cir.1988); *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1471 (11th Cir.1985). That is not the case here. In this case Hansard's efforts were simply insufficient. The flea market business was never more than a part-time enterprise. Hansard was fully capable of continuing his job search during the week. Further, Hansard did not approach the flea market as a business, rather he primarily gathered odds and ends from his home and sold them.

This court's decision in *NLRB v. Armstrong Tire & Rubber Co.*, 263 F.2d 680 (5th Cir.1959), is dispositive. There we held that the plaintiff did not satisfy his statutory duty under the National Labor Relations Act to mitigate damages when he began working in his wife's business. *See id.* at 683–84 & n. 4. The court noted that the business never turned a profit and was ultimately sold for the price of its inventory and equipment. *Id.* at 684 n. 4. In addition, once Hansard found the business unsuccessful, his duty to mitigate damages required him to resume his search for other employment. *See Boyd v. SCM Allied Paper Co.*, 42 Fair Empl.Prac.Cas. (BNA) 1643, 1655 (N.D.Ind.1986) [1986 WL 15558].

■ We conclude that Hansard failed to use reasonable diligence to mitigate his damages after March, 1984, and remand the case for recalculation of back pay damages.

#### B. *Front Pay*

Pepsi also claims that the district court erred in awarding Hansard front pay.

Part of our difficulty in addressing this issue arises because Congress did not specify what remedies are available to aggrieved plaintiffs. Rather, Congress granted courts broad authority to fashion relief.

> In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter....

29 U.S.C. § 626(b) (1982). In fashioning remedies under the ADEA, we must remember that the purpose of Congress was to make the plaintiff whole. *See Davis v. Combustion Eng'g, Inc.,* 742 F.2d 916, 923 (6th Cir.1984); *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 118 (4th Cir.1983); *Coleman v. City of Omaha,* 714 F.2d 804, 808 (8th Cir.1983); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1097 (8th Cir.1982); *Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). ADEA remedies are supposed to be compensatory, not punative. *See* H.R.Rep. No. 950, 95th Cong. 2d Sess. 13, *reprinted in* 1978 U.S. Code Cong. & Ad.News 528, 535 ("The ADEA as amended by this act does not provide remedies of a punitive nature.").[2]

■ "Front pay" refers to future lost earnings. Courts have permitted ADEA plaintiffs to recover "front pay" in addition to the usual award of back pay. Hawks, *Future Damages in ADEA Cases,* 69 Marq.L.Rev. 357, 362 (1986); Marion, *Remedies Under the ADEA,* 45 Md.L.Rev. 298, 331 (1986).[3] This court has suggested that front pay may be an appropriate remedy in ADEA cases. *See Smith v. Office of Personnel Management,* 778 F.2d 258, 262 n. 2

(5th Cir.1985) ("[W]e note that ... where the plaintiff is unable as a result of discrimination to earn his livelihood, an award of front pay probably would be necessary to 'effectuate the purposes of the Act,'" *quoting* 29 U.S.C. § 626(b) (1982)), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986). An award of "front pay" is not inherently punitive.

However, consistent with the Act's "make-whole" philosophy, front pay is available only in limited circumstances. Courts have a decided preference for reinstatement instead of front pay. It has been held that front pay cannot be recovered unless the plaintiff shows that reinstatement is not feasible. *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 373 (3d Cir. 1987); *Bruno v. Western Elec. Co.,* 829 F.2d 957, 966 (10th Cir.1987); *McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 616 (1st Cir.1985); *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984); *see* Hawks, *supra,* at 365; Marion, *supra,* at 334–35. *See generally* Annotation, *Reinstatement as Remedy for Discriminatory Discharge or Demotion Under Age Discrimination in Employment Act (29 USCS §§ 621 et seq.),* 78 A.L.R.Fed. 575, §§ 3–4 (1986) [hereinafter Annotation, *Reinstatement*].

■ In this case, the district court did not consider whether reinstatement was feasible. It merely submitted the issue of front pay to the jury. *See* R. 534, 537. Thus, the district court's award of front

---

**2.** Consistent with this congressional mandate, courts have held that ADEA plaintiffs are not entitled to punitive damages or damages for pain and suffering. *See* 3A A. Larson & L. Larson, *Employment Discrimination* §§ 103.51, 103.53 (1988).

**3.** *See McNeil v. Economics Laboratory, Inc.,* 800 F.2d 111, 118 (7th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 614–16 (1st Cir.1985); *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 795–97 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1551 (11th Cir.1984); *Whitt-*

*lesey v. Union Carbide Corp.,* 742 F.2d 724, 726 (2d Cir.1984); *Davis,* 742 F.2d at 922–23; *EEOC v. Prudential Fed. Sav. & Loan Ass'n,* 741 F.2d 1225, 1232 (10th Cir.1984), *vacated on other grounds,* 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 913 (1985); *Gibson,* 695 F.2d at 1100; *Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1319 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982).

The Fourth Circuit has not addressed the issue. *See generally* Annotation, *Award of "Front Pay" Under § 7 of Age Discrimination in Employment Act of 1967 (29 USCS § 626),* 74 A.L.R. Fed. 745, § 4 (1985).

pay in this case was improper without a precedent finding that reinstatement was not feasible. *See generally* Annotation, *Reinstatement, supra* §§ 5–11 (collecting cases that discuss factors affecting the availability of reinstatement).

The trial court initially must determine whether a plaintiff is entitled to front pay. It may not submit this issue to a jury. If the trial court concludes that front pay is appropriate, then the jury should determine the amount of damages. *See Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1333 n. 4 (7th Cir.1987), *vacated on other grounds*, —— U.S. ——, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Eivins v. Adventist Health Sys./E. & Middle Am., Inc.*, 660 F.Supp. 1255, 1261 (D.Kan.1987). *Contra Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1257–58 (2d Cir.1987); *Gibson*, 695 F.2d at 1100; *Miller v. Pabst Brewing Co.*, 670 F.Supp. 1420, 1421 (E.D. Wis.1987); *Ventura v. Federal Life Ins.*, 571 F.Supp. 48, 51 (N.D.Ill.1983).

Finally, for the benefit of the district court on remand, we note that other courts have held that a plaintiff's failure to mitigate his damages will usually reduce or perhaps eliminate his entitlement to front pay. *See Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1347 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988); *McNeil*, 800 F.2d at 118; *Maxfield*, 766 F.2d at 796; *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1173 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Whittlesey*, 742 F.2d at 728–29. Indeed, the Second Circuit stated that the plaintiff's failure to mitigate his damages completely forecloses the availability of front pay. *See Dominic*, 822 F.2d at 1258. Thus, if the district court finds on remand that Hansard cannot be reinstated, the court must consider his failure to mitigate his damages in determining the extent to which, if at all, front pay is appropriate.

## VI.

## THE ISSUES RAISED BY HANSARD'S CROSS–APPEAL

Hansard's cross-appeal raises two issues. First, he argues that the district court erred in holding that the evidence was insufficient to support the jury's finding that Pepsi's discrimination was willful. R. 532, 536. This finding would have entitled Hansard to liquidated damages. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623–24, 83 L.Ed.2d 523 (1985). However, the district court, on the basis of its insufficiency finding, refused to award liquidated damages. R. 784.

The Supreme Court has held that liquidated damages are a punitive sanction and should be reserved for the most egregious violations of the ADEA. *Trans World*, 469 U.S. at 125, 105 S.Ct. at 623–24. Liquidated damages should not be awarded unless the defendant acted knowingly or recklessly. *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 287 (5th Cir.1986).

The evidence in this case was weak. There is simply no evidence that Pepsi's actions were so egregious as to justify finding a willful violation. *See Smith v. Consolidated Mut. Water Co.*, 787 F.2d 1441, 1443 (10th Cir.1986). Pepsi was entitled to judgment on this issue.

Hansard next complains of the trial court's failure to award prejudgment interest. This court has never addressed whether an ADEA plaintiff is entitled to prejudgment interest on his award of back pay. *See Olitsky v. Spencer Gifts, Inc.*, 842 F.2d 123, 126 n. 1 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988).

All of the courts that have addressed the issue have concluded that prejudgment interest should be awarded to ADEA plaintiffs who are not awarded liquidated damages.[4] *Reichman v. Bonsignore, Brignati*

---

4. Courts are split on the question of whether a plaintiff who recovers liquidated damages may

also recover prejudgment interest. *Compare Reichman v. Bonsignore, Brignati & Mazzotta,*

& Mazzotta P.C., 818 F.2d 278, 281 (2d Cir.1987); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1101 (11th Cir. 1987); *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.*, 789 F.2d 253, 259–60 (3d Cir.1986); *Blim v. Western Elec. Co.*, 731 F.2d 1473, 1479 (10th Cir.), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984); *Gibson*, 695 F.2d at 1102 n. 9; *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 489 (4th Cir.1982); *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 162 (7th Cir.1981); *Kelly v. American Standard Inc.*, 640 F.2d 974, 982 (9th Cir.1981); *see* Marion, *supra*, at 338–39. The primary rationale for this conclusion is that unlawful discrimination deprives an employee of his salary as well as the *use* of that salary during the interim period. *Heiar v. Crawford County*, 746 F.2d 1190, 1201–03 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *see also Reichman*, 818 F.2d at 281 ("[P]rejudgment interest is designed to compensate the plaintiff for the loss of the use of money wrongfully withheld through an unlawful discharge."). Thus, awarding prejudgment interest is consistent with the purpose of the ADEA, *i.e.*, making the plaintiff whole. *Cf. Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 6–7, 92 L.Ed. 3 (1947) (stating that in deciding whether interest is appropriate in a given case, the court should consider congressional intent).

Pepsi argues that prejudgment interest in not available under the ADEA. It points out, correctly, that the remedial provisions of the ADEA were modeled after those of the Fair Labor Standards Act (FLSA). *See* H.R.Rep. No. 805, 90th Cong. 1st Sess. (1967), *reprinted in* 1967 U.S.Code Cong. & Admin.News 2213, 2218; Marion, *supra*, at 301; Note, *Set–Offs Against Back Pay Awards under the Federal Age Discrimination in Employment Act*, 79 Mich.L. Rev. 1113, 1113 (1981). Because prejudgment interest generally is not recoverable under the FLSA, Pepsi argues, ADEA plaintiffs are also precluded from recovering prejudgment interest. This court's position on the availability of prejudgment interest under the FLSA, however, is not entirely consistent. *Compare Peters v. City of Shreveport*, 818 F.2d 1148, 1168–69 (5th Cir.1987) (refusing to award prejudgment interest under § 216 of the FLSA), *cert. dismd.*, ——— U.S. ———, 108 S.Ct. 1101–02, 99 L.Ed.2d 264 (1988) *and Hill v. J.C. Penney Co.*, 688 F.2d 370, 375 n. 4 (5th Cir.1982) (same) *and Foremost Dairies, Inc. v. Ivey*, 204 F.2d 186, 190 (5th Cir.1953) (same) *with Marshall v. Hope Garcia Lancarte*, 632 F.2d 1196, 1199 (5th Cir.1980) (permitting prejudgment interest award under § 217 of the FLSA) *and Brennan v. City Stores, Inc.*, 479 F.2d 235, 242 (5th Cir.1973) (same).

The fact that prejudgment interest is not recoverable under the FLSA, however, does not compel the conclusion that prejudgment interest is not recoverable under the ADEA. As the Supreme Court has noted, the remedial provisions of the two acts "are not identical." *Trans World*, 469 U.S. at 125, 105 S.Ct. at 623–24. The FLSA has no equivalent to 29 U.S.C. § 626(b) (1982) which grants courts broad authority to fashion equitable remedies. *Cf.* 29 U.S. C. § 216(b) (1982) (providing for an award of "unpaid minimum wages, or ... unpaid overtime compensation ... and an additional amount as liquidated damages"). Other courts have rejected similar arguments. *See, e.g., Lindsey*, 810 F.2d at 1101.

We conclude that the trial court erred in holding that prejudgment interest was not available under the ADEA. Accordingly, we remand the case for further

P.C., 818 F.2d 278, 281 (2d Cir.1987) (permitting recovery of both) *and Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1102 (11th Cir. 1987) (same) *with Blim v. Western Elec. Co.*, 731 F.2d 1473, 1479–80 (10th Cir.), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984) (holding that ADEA plaintiffs may not recover prejudgment interest if they recover liquidated damages) *and Rose v. National Cash Register*

*Corp.*, 703 F.2d 225, 230 (6th Cir.) (same), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983) *and Gibson*, 695 F.2d at 1101–03 (same) *and Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir.1982) (same); *and Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir.) (same), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981).

consideration. *See Heiar*, 746 F.2d at 1203.

## VII.

## CONCLUSION

In sum, we conclude that there was sufficient evidence to support the jury's verdict that Hansard was discriminated against because of his age. However, we reverse the district court's award of damages and remand the case for recalculation of damages. We conclude that Hansard was not entitled to liquidated damages. Finally, we reverse the district court's order denying prejudgment interest.

AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.

JERRE S. WILLIAMS, Circuit Judge, concurring in part and dissenting in part.

I concur fully in Judge Sneed's opinion for the Court in all parts except the consideration of and holdings as to damage issues in part V.

The opinion of the Court is correct in holding that starting in December 1985, appellee was not entitled to back pay because he abandoned job hunting efforts and took early retirement under social security. I think it's regrettable that appellee was forced into this alternative because the need of income made it necessary for him to do so. But I agree that under the law he was not entitled to an award of back pay following that date.

But I dissent from the conclusion in the opinion of the Court that the jury verdict must be upset with respect to back pay for the period from March 1984 until December 1985. Until March 1984, appellee engaged in an intensive search for comparable work. The jury had the right to believe his testimony to this effect and also that it was corroborated by the Regional Director of the Texas Employment Commission who received reports of these job hunting efforts.

In March 1984, at the age of 61, he undertook the establishment of a "flea market" business. Admittedly it began as a small operation. He was not a capitalist, and he had been fired from his income source in violation of law by the appellant. The jury had the right to believe his testimony that he continued his search for a job, but not with the prior intensity and also his testimony that if he had obtained such a job he would have taken it immediately. He tried to build up this small part-time operation from scratch into a business which would yield him some income. He did not succeed, and a little over a year later he finally gave up. On the basis of this evidence the jury had the right to conclude that appellee was continuing to attempt to mitigate his losses from his wrongful discharge during the period he undertook to establish this business.

The majority takes the position that our decision in *NLRB v. Armstrong Tire & Rubber Co.*, 263 F.2d 680 (5th Cir.1959) "is dispositive" to the contrary. In that case an employee was wrongfully discharged under the National Labor Relations Act. He attempted unsuccessfully to justify mitigation of back pay damages by going to work in his wife's business, a small drive-in store, which had never made a profit. There are two distinctions between the *Armstrong Tire & Rubber* case and the case before us. The first is that the discharged employee was not undertaking to establish a business but was moving into a business already established without really expecting to get any substantial amount of income. The major distinction, significant and critical, is that the discharged employee never undertook to look for a job but simply immediately went to work in his wife's business.

What the majority opinion is saying in this case is that even though a wrongfully discharged employee fairly close to the age of retirement has intensively looked for work for a substantial period of time without success, he cannot then undertake the relatively slow and difficult process of trying to establish a business of his own on absolutely minimum capital as a means of earning income and mitigating damages. There is no law compelling this result. And there clearly is enough evidence in the

record to indicate that this is exactly what this wrongfully discharged employee was trying to do. There may be evidence to the contrary, but the question was one for the jury. We do not have the authority to upset that jury verdict.

On the issue of front pay the Court is properly returning the case to the district court for an evaluation of the award of front pay. Some limitations may need to be placed upon it. At least it can be argued that not all of the critical factors were considered. While I concur in returning the issue of front pay to the district court for re-examination, I do not join in all of the observations and implications in the majority opinion. It is quite true that front pay is a substitute for reinstatement. Appellee should have been reinstated by the company. But it is unrealistic to talk of reinstatement now, although the majority opinion does, when he is 65 years old and when he was almost 64 years old when the district court made its decision. The only practicable remedy to compensate this appellee for the wrongful act of the appellant is the awarding of front pay. If appellant had carried out its obligations under the statute, appellee would have been reinstated in 1983. He would have enjoyed the normal expectation, which he testified was his reasonable expectation, that he would work with the company until the age of 65 and then retire. This evidence, which must be accepted, creates a classic case for front pay. This is the only way that the plaintiff can be made whole as a means of effectuating the purposes of the act. *Smith v. Office of Personnel Management,* 778 F.2d 258–62 (5th Cir. 1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986).

The majority opinion was extremely pedantic in concluding that the district court prior to awarding front pay was required in this case to have made its own verbalized finding that reinstatement was not feasible. It was obvious on its face that reinstatement of this man, almost 64 years old, was not feasible. The finding is clearly implied in this case in submitting the issue to the jury, although of course the court can make such a verbalized finding as a

matter of form on the remand. My conclusion finds support in a wise dictum in *Davis v. Combustion Engineering, Inc.,* 742 F.2d 916, 923 (6th Cir.1984) in upholding a front pay award for an illegally discharged 59 year old employee. The court said that the failure to award front pay to a 63 year old victim of discriminatory discharge "might be an abuse of discretion." The court went on to say, "... [T]hat which makes people whole is a matter of discretion for the trial court under the facts and circumstances of the individual case."

Finally, I agree with the opinion for the Court that the issue of mitigation in awarding front pay is not clearly resolved by prior court opinion. What is critical in evaluating the role of mitigation is the recognization, as the opinion for the Court does recognize, that the basic thrust of the statute is to make the employee whole for his losses as a result of the improper discharge. The rules with respect to mitigation in the award of back pay are not controlling. Even though front pay is not punitive, it has the function of being awarded in addition to back pay in lieu of reinstatement for the purpose of trying to make the employee whole for the wrong done to him.

In my view, on remand, the issue of the amount of front pay should be determined following these established principles, but the clear implication in the majority opinion is that any award of front pay is questionable because of a lack of mitigation. I do not find this implication acceptable. If there is lack of mitigation, it is only one factor to be considered in awarding front pay in this case. Discharge only seven months before appellee's pension was to vest is certainly another. The later refusal to rehire appellee in another vacant job to which he obviously was suited is another. In sum, appellant was obligated by its violation of the law to reinstate appellee. It did not do so. The statutory policy requires that the judgment of the court came as close as possible to making the victim whole for this violation of the law. 29 U.S.C. § 626(b). Only a substantial front

pay award can approach the satisfaction of
that objective.